UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRIE OWEN KAMPSTER,<br><br>                      Petitioner,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security Administration,<br><br>                      Respondent. | Case No. 2:11-cv-00283-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Terrie Kampster ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for social security disability benefits under Title II of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for social security disability benefits on April 23, 2008, alleging that he had been disabled and unable to work since September 1, 2007, due

**MEMORANDUM DECISION AND ORDER - 1**

to a lumbar spine impairment, severe back pain, and nerve damage. This application was denied initially. After reconsideration, Petitioner was found disabled during a portion of the time he was claiming disability -- beginning April 1, 2008, but not at any time prior to that date. (AR 104.) On February 12, 2009, Petitioner requested a hearing before an Administrative law Judge concerning the period from Petitioner's alleged onset date of September 1, 2007, to April 1, 2008.

A hearing was held on December 17, 2009, before Administrative Law Judge ("ALJ") Paul Hebda. In a decision dated January 15, 2010, the ALJ found Petitioner not disabled at any time, reversing the earlier finding of disability since April 1, 2008. (AR 13.) Petitioner timely requested review by the Appeals Council, which denied the request for review on April 20, 2011, making the ALJ's decision the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on June 17, 2011. (Dkt. 1.) The Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g).

At the December 17, 2009 hearing, Petitioner was represented by a non-attorney representative and testified on his own behalf. The ALJ also heard testimony from a vocational expert. Based upon the finding that Petitioner could perform past relevant work as a street sweeper operator (as that position is defined in the Dictionary of Occupational Titles) and the alternative finding that Petitioner could perform other jobs existing in significant numbers in the national economy, the ALJ issued a decision finding Petitioner not disabled on January 15, 2010. (AR 16.)

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner was born in 1953, making him 54 years of age at the time of his alleged onset of disability date, and has a high school education. Petitioner reported prior work experience as a street sweeper operator and as a dump-truck driver.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity after his alleged onset date. (AR 18.) At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found that Petitioner's disorder of the back post lumbar fusion was a severe impairment within the meaning of the Regulations. (AR 18.)

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Petitioner's back problems under Listing 1.04 dealing with disorders of the spine. (AR 21.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's Residual Functional Capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that Petitioner had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the qualifications that Petitioner should avoid concentrated exposure to excessive vibration, only occasionally climb ladders, ropes, or

**MEMORANDUM DECISION AND ORDER - 3**

scaffolds, and only occasionally stoop or kneel. (AR 21.)

At step four, the ALJ found Petitioner was able to perform his past relevant work as a street sweeper operator. (AR 23.) Although the determination that a claimant is capable of performing past relevant work is dispositive on the issue of disability, the ALJ made an alternative finding at step five in this case. (AR 24-25.) Ordinarily, if a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. Here, based upon the vocational expert's testimony that Petitioner could perform work as an escort vehicle driver, chauffeur, and message courier, the ALJ found that jobs existed in significant numbers in the national economy which Petitioner could perform. Given these alternative findings, the ALJ found Petitioner not disabled within the meaning of the Social Security Act from August 1, 2007 – Petitioner's alleged onset of disability date – through the date of the ALJ's decision on January 15, 2010 .

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).

**MEMORANDUM DECISION AND ORDER - 4**

An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that, when the evidence can reasonably support either affirming or reversing the

Commissioner's decision, the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Ninth Circuit has instructed the district courts that the "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that [the] claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). "Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Petitioner challenges the ALJ's decision on two grounds. First, Petitioner argues that the ALJ failed to properly evaluate the medical opinion evidence. Second, Petitioner argues that the ALJ failed to properly evaluate Petitioner's credibility. For the reasons discussed below, given the deferential standard of review the Court is required to employ, both arguments will be rejected and the ALJ's decision will be affirmed.

1. **Evaluation of the Medical Opinion Evidence**

Case law from the United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally given greater weight than those of other physicians

**MEMORANDUM DECISION AND ORDER - 6**

because of the treating physicians' knowledge of the claimant's condition. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001). However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is not supported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also*, *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject the treating physician's opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Substantial evidence, for the purpose of this analysis, may not be based upon a non-examining physician's opinion alone, but the Ninth Circuit has held that a non-examining physician's opinion constitutes substantial evidence when the opinion is consistent with independent clinical findings or other evidence in the record. *See Morgan*, 169 F.3d at 600.

Here, Petitioner argues that the ALJ improperly rejected the opinions of two treating physicians -- Dr. Scott Reed and Dr. Scott Magnuson. Specifically, Petitioner

**MEMORANDUM DECISION AND ORDER - 7**

argues that the ALJ improperly relied upon a statement by Dr. Reed's physician's assistant (a non-acceptable medical source under the implementing regulations)[1] and that the ALJ improperly rejected the treating physicians' opinions in favor of three non-examining state agency medical consultants.

The Court must first determine the appropriate standard to apply. Dr. Magnuson opined that it was unrealistic to expect Petitioner to work on a full time basis (AR 441) and Dr. Reed offered an opinion outlining significant work-related limitations. (AR 427-434.) In contrast, the non-examining state agency medical consultants opined that Petitioner could perform a limited range of light work. (AR 320-321, 335, 336.) Because Petitioner's treating physicians' opinions were contradicted by other medical opinions in the record, the ALJ was required to provide "specific and legitimate reasons" for rejecting those opinions. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

### A.  ALJ's Summary of the Medical Evidence

The Ninth Circuit has stated that an ALJ may reject a physician's opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ in this case engaged in a lengthy discussion of Petitioner's medical history. (AR 18-21.) The most pertinent portions of that discussion are repeated

---

[1] *See* 20 C.F.R. § 404.1513 and 20 C.F.R. § 404.1527; *see also* Social Security Ruling 06-03p (stating that "[i]nformation from [non-acceptable medical sources] cannot establish the existence of a medically determinable impairment [and] there must be evidence from an 'acceptable medical source' for this purpose.").

**MEMORANDUM DECISION AND ORDER - 8**

here.

The ALJ noted that Petitioner injured his back in September of 2007, was seen in the emergency room on two occasions, and was placed on Oxycodone and received multiple injections of pain medication. (AR 18.) During that time period, Petitioner saw Dr. Reed, who suspected radiculopathy and recommended an MRI. (*Id.*) Petitioner also saw Dr. Jeffrey McDonald, a neurosurgeon, who examined Petitioner and noted that Petitioner appeared in extremis with exaggerated pain mannerisms. (AR 19.) Dr. McDonald also noted that Petitioner exhibited giveaway weakness, which is when a patient suddenly stops exerting force during a muscle resistance test and is in contradistinction to true weakness where there is a smooth decrease in resistance with increasing force.[2]

In November of 2007, Petitioner underwent total L5 and rostral S1 laminectomy -- which includes the surgical removal of the posterior bony arches of one or more vertebrae in the spine in order to inspect the spinal canal and remove pathological tissues from the spinal cord -- and internal fixation of L5-S1 with pedicle screws and rods. (AR 19, 240.) Shortly after the surgery, Dr. McDonald reported in December of 2007 that Petitioner was doing well and his symptoms had significantly decreased. (AR 19.) In January of 2008, Petitioner was complaining of numbness in his right thigh and significant pain in his

---

[2] See American Academy of Neurology, "The Neurological Examination," *available at* www.aan.com/familypractice/html/chp1p4.htm (last visited September 4, 2012).

**MEMORANDUM DECISION AND ORDER - 9**

lower extremities, but Dr. McDonald reassured him that the laboratory reports looked good and the doctor encouraged Petitioner to reduce his Oxycontin use. (*Id.*) X-rays from this time-period showed good alignment with intact hardware and no evidence of complications. (*Id.*)

The ALJ noted that the record contained a physical therapy progress report from February of 2008 indicating that Petitioner had "turned a corner" and that his symptoms were decreasing, with significantly less radiculopathy. (AR 19, 392.) The physical therapy notes also indicate that Petitioner's "symptoms are decreasing weekly," that "[h]e reports significantly less radiculopathy," and that "[o]verall, he is doing quite well, but probably not quite ready to return to work in highway construction." (AR 392.)

In July of 2008, after discussing Petitioner's condition with Dr. Reed, Terry Spohr (Dr. Reed's physician's assistant) opined that Petitioner could not go back to work doing construction, but thought that Petitioner may be able to drive a truck. (AR 334) ("He cannot lift heavy objects. If he were just to drive and not have to lift anything heavy that would be a possibility, although driving an eighteen wheeler or a dump truck may be painful for his back since they do bounce quite a bit.") During the same month, Dr. McDonald noted that Petitioner continued to have lower back pain, but a CT of the lumbar spine showed a solid fusion with no neural element compression. (AR 291, 293.)

The ALJ noted that in September of 2008, Petitioner saw Dr. Reed, and the examination was significant only for tenderness on palpation in the lower back. (AR 20, 330.) A month later, in October of 2008, Petitioner reported to Dr. Reed that his pain

**MEMORANDUM DECISION AND ORDER - 10**

control was adequate at the time and that he was staying minimally active. (AR 20, 328.) Also during the Fall of 2008, Petitioner began seeing Dr. Magnuson, a pain management specialist. (AR 401.) Dr. Magnuson noted that Petitioner was not in apparent distress, that his lumbar palpation was positive for bilateral tenderness from L3 to S1, Flexion was limited due to pain, and that Petitioner's motor strength was intact but giveaway with resistance. (AR 403.)

### B. Dr. Reed's Opinion

Dr. Reed completed a Multiple Impairment Questionnaire dated December 16, 2008. (AR 427-434.) In that questionnaire, Dr. Reed offered the following opinions concerning Petitioner's limitations: Petitioner was able to sit for 2 hours and stand/walk 1 hour in an 8-hour workday (AR 429); he was required to get up and move around every 15 minutes (*id.*); he could lift and carry 10 pounds occasionally, but never more (AR 430); he required unscheduled breaks to rest approximately every 2 hours during an 8-hour workday and he needed to rest 1 hour before returning to activity (AR 432); and Petitioner's impairments would require him to be absent from work, on average, more than three times a month. (AR 433.) Dr. Reed also noted that improvement was not expected. (AR 427.)

Dr. Reed's description of Petitioner's limitations would have dictated a finding that Petitioner was capable of performing less than sedentary work, *i.e.*, that Petitioner was disabled. The ALJ rejected this opinion. (AR 23.) Petitioner argues that the ALJ erred by rejecting Dr. Reed's opinion as inconsistent with the opinion of Mr. Spohr (Dr. Reed's

**MEMORANDUM DECISION AND ORDER - 11**

physician's assistant). (*Pl.'s Br.* at 12, Dkt. 15.) Petitioner's argument fails for two reasons.

First, notwithstanding the fact that Mr. Spohr is a non-acceptable medical source, the ALJ was nonetheless required to consider the opinion in connection with the other medical evidence in the record. Under Section 423 of the Social Security Act, the Commissioner is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); *see also* 20 CFR § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive."). The term "medical sources" refers to both "acceptable medical sources" and other health care providers who are not "acceptable medical sources." *See* 20 CFR § 404.1502 and 416.902. The regulations provide that, "[i]n addition to evidence from the acceptable medical sources" evidence from other sources should be used to "show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 CFR § 404.1513(d). This includes evidence from physicians' assistants such as Mr. Spohr. 20 CFR § 404.1513(d)(1).

Second, Petitioner's argument misconstrues the ALJ's decision. The ALJ noted that the opinions contained in the questionnaire submitted by Dr. Reed were dated December of 2008, approximately one year after Petitioner's surgery. Six months earlier, however, Dr. Reed's assistant offered an opinion, after discussing Petitioner's condition with Dr. Reed, that Petitioner could lift up to 20 pounds and work as a truck driver. Comparing these opinions, the ALJ drew the logical inference from Dr. Reed's December

**MEMORANDUM DECISION AND ORDER - 12**

2008 opinion that Petitioner's condition was worsening. Rejecting Dr. Reed's opinion, the ALJ stated that "there is no indication of significant worsening on physical exams which would support the reduced residual functional capacity outlined by Dr. Reed." (AR 23.) The ALJ further stated that, "the longitudinal record supports a finding of improved functioning after the surgery." (*Id.*) In other words, the ALJ relied upon Mr. Spohr's opinion as one piece of the medical record as a whole, which the ALJ found did not support Dr. Reed's opinion that Petitioner's condition after surgery was not improving.

The fact that Dr. Reed's opinion was not supported by the record as a whole is a legitimate reason for rejecting the opinion. *See Morgan*, 169 F.3d at 601 (holding that an opinion may be rejected because it is unreasonable in light of the other evidence in the record). Moreover, the ALJ's decision on this issue is supported by the record. As the ALJ noted in his summary of the medical evidence, shortly after Petitioner's surgery, he reported to Dr. McDonald that he was doing well and his symptoms had significantly improved. (AR 19, 249.) Dr. McDonald also noted that Petitioner's laboratory studies looked good (AR 19, 250) and a CT of Petitioner's lumbar spine showed a solid fusion with no neural element compression. (AR 19, 291, 293.) Finally, the record also contains the physical therapy progress report indicating that Petitioner had "turned a corner" in his treatment and Petitioner's symptoms were decreasing weekly. (AR 19, 392.)

For the reasons outlined above, the ALJ did not err in rejecting Dr. Reed's opinion.

**MEMORANDUM DECISION AND ORDER - 13**

### C. Dr. Magnuson's Opinion

Dr. Magnuson completed a Multiple Impairment Questionnaire dated December 29, 2008. (AR 443-450.) In the questionnaire, Dr. Magnuson offered the following opinions concerning Petitioner's limitations: Petitioner could sit 1 hour and stand/walk less than 1 hour in an 8-hour workday (AR 445); he would be required to get up and move around every 15 to 30 minutes when sitting (*id.*); he could lift 20-50 pounds occasionally and 5 pounds frequently (AR 446); his pain, fatigue, or other symptoms were frequent and severe enough to interfere with his concentration (AR 448); and he would be required to take frequent breaks to rest at unpredictable intervals during the day. (*Id.*) In a letter dated December 29, 2008, Dr. Magnuson opined that it was "unrealistic to expect [Petitioner] to be able to work an 8-hour day 5 days a week." (AR 441.)

The ALJ rejected Dr. Magnuson's opinion, stating that "the longitudinal record presented here simply does not support Dr. Magnuson's opinion that the claimant cannot work full time." (AR 23.) The ALJ also stated that, "[a]s outlined in detail above, the record does not indicate significant findings on imaging studies or physical examinations to support such disabling impairments." (*Id.*) (citations to record omitted).

Petitioner challenges the ALJ's decision on this issue, arguing that the record contains clinical findings supporting Dr. Magnuson's opinion. The Court does not necessarily disagree with this argument. Having fully reviewed the record, however, the Court finds that it also contains clinical findings supporting the ALJ's rejection of Dr. Magnuson's opinion. For instance, a CT scan from July of 2008 showed a solid fusion

**MEMORANDUM DECISION AND ORDER - 14**

with no neural element compression at any level. (AR 293.) Dr. Reed's physical examination of Petitioner in September of 2008 was notable only for tenderness on palpation in the lower back. (AR 330.) Dr. Magnuson himself noted in September of 2008 that Petitioner's motor strength was intact. (AR 403.)

Conflicting clinical evidence is a legitimate reason for rejecting a treating physician's opinion. *Reddick*, 157 F.3d at 725. Moreover, it is the role of the ALJ, not this Court to resolve ambiguities in the medical evidence. *See e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.") If the Court were reviewing the record under a de novo standard of review, it very well may have reached a different conclusion than the ALJ. That, however, is not the standard. The Court may not disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The ALJ gave specific and legitimate reasons for rejecting the opinion of Dr. Magnuson and must be upheld.

## 2. Evaluation of Petitioner's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has established a two-part test for determining whether a claimant's testimony regarding subjective pain or the severity of symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must

**MEMORANDUM DECISION AND ORDER - 15**

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected o produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant presents objective medical evidence of an underlying impairment which could reasonably be expected to produce pain, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotations and citations omitted).

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ

**MEMORANDUM DECISION AND ORDER - 16**

may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Social Security Ruling ("SSR") 96-7p.[3]

Errors in an ALJ's credibility analysis do not necessarily invalidate the entire analysis. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' [the error] is deemed harmless and does not warrant reversal. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

Here, the ALJ found "that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 22.) The question before the Court is whether the ALJ offered specific, clear and convincing reasons for rejecting Petitioner's testimony. For the reasons that follow, the Court finds that he did.

---

[3] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 17**

The ALJ outlined several reasons for finding Petitioner's testimony not credible. Petitioner testified that he had not recovered from his surgery and that he continued to suffer from debilitating pain. The ALJ found this testimony not credible based upon the medical records demonstrating that Petitioner was doing well post-surgery. These medical records included Dr. McDonald's statement that Petitioner was doing well and that Petitioner's symptoms had significantly improved, (AR 19, 286, 291), his CT scan, which showed a solid fusion with no neural element compression at any level, (AR 293), and the statements made by Petitioner's physical therapist that Petitioner had "turned a corner" in his treatment and that Petitioner's symptoms were decreasing weekly with significantly less radiculopathy. (AR 392.) The inconsistency between Petitioner's testimony and the medical records was a clear and convincing reason to reject Petitioner's testimony concerning the severity of his symptoms. See *Thomas*, 278 F.3d at 958-59.

The ALJ also noted that Petitioner testified to limitations that were not documented in the record. This was a legitimate reason for finding Petitioner not credible. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ found that Petitioner's exaggerated pain responses and giveaway weakness noted by more than one doctor weighed against Petitioner's credibility. (AR 23.) This was a legitimate reason for finding Petitioner not credible. *Thomas*, 278 F.3d at 959 (indicating that the failure "to give maximum or consistent effort" during a physical capacity evaluation supports an adverse credibility finding); *see also*, *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 18**

For the reasons set forth above, the Court finds that the ALJ provided specific, clear and convincing reasons for rejecting Petitioner's testimony. Thus, the ALJ's adverse credibility determination will be upheld.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.



DATED: September 19, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**